# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Joseph Lee Garrett

v.

Ronald Angelone et al.

September 8, 1997

Case No. CL97-180

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this habeas corpus case, Joseph Lee Garrett contends that he is unlawfully detained because his convictions are tainted by ineffective assistance of trial counsel, prosecutorial misconduct, insufficient evidence, perjured testimony, and related "due process" violations.

### *Prior Proceedings*

On March 3, 1994, Garrett was convicted in this court of three drug-related felonies and sentenced in accordance with the jury verdicts to twenty years in prison.

Garrett appealed his convictions to the Court of Appeals. On February 27, 1995, that court denied the appeal. Garrett's attempt to appeal to the Supreme

Court was unsuccessful because the appeal was not perfected in a timely manner.

Then, Garrett filed a petition for writ of habeas corpus in this court (# L96-227). In his pleading, he claimed that he was denied his right of appeal because of ineffective assistance of counsel. On August 1, 1996, this court directed the prosecutor to move the Supreme Court for leave for Garrett to pursue a delayed appeal. That motion was made, and on August 15, 1996, the Supreme Court granted Garrett leave to proceed with an appeal. Other grounds alleged in Garrett's petition were not adjudicated, and the habeas proceeding was concluded.

On March 18, 1997, the Supreme Court refused Garrett's appeal on the merits.

### This Proceeding

Garrett instituted this habeas proceeding on April 30, 1997, setting forth essentially the same grounds raised but not adjudicated in the previous habeas proceeding. The respondents filed a motion to dismiss, accompanied by memorandum and affidavits. The court granted Garrett time to reply. Garrett submitted his reply on August 12, 1997. This opinion addresses the respondents' motion.

### Applicable Law

It is well settled that if the allegations of illegality can be fully determined on the basis of recorded matters, the court may make its determination whether a writ should issue on the basis of the record. Virginia Code § 8.01-654(B)(4); *Yeatts v. Murray*, 249 Va. 285 (1995); *Hill v. Commonwealth*, 8 Va. App. 60 (1989). On the other hand, if nonfrivolous cognizable claims are asserted about factual matters outside the record, the court should conduct an evidentiary hearing.

In this case, a full record exists, including a transcript of all proceedings. Thus, the court is able to review the complete record with respect to the merits of Garrett's contentions.

### Ineffective Assistance of Counsel

Garrett's claim of ineffective counsel span the spectrum from allegations regarding pretrial preparation (failure to summons witnesses and failure to investigate the witnesses against him) to allegations concerning performance

at the trial (failure to adequately cross-examine witnesses, failure to object to instructions, comments to the jury that were prejudicial to Garrett) to allegations of deliberate misconduct (conspiring with the prosecutor to allow witnesses against him to give false testimony and intentionally refusing to call exculpatory witnesses).

When a habeas petitioner alleges ineffective assistance of counsel, he bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and that the grossly deficient services actually prejudiced the defense. *Strickland v. Washington*, 455 U.S. 668 (1984). A heavy measure of deference is given to counsel's decisions regarding trial strategy or tactics. As for the "prejudice" factor, there must be a showing that there is a reasonable probability that but for counsel's ineptness or errors the results would have been different. A "reasonable probability," as defined in *Strickland*, means a probability sufficient to undermine confidence in the outcome of the case.

Further, when the petitioner is claiming ineffective counsel (or some other violation of his constitutional rights), he must explain the claim with such specificity or particularity that the court can make a reasonable judgment whether a plenary hearing would be fruitful in ferreting out the truth of the allegations. Conclusory statements, with no factual support, are insufficient. *Penn v. Smyth*, 188 Va. 367 (1948).

Here, the allegations about counsel's performance contain nothing more than conclusory statements or argumentative propositions; none is accompanied by a proffer of evidence that allegedly was not produced.

At the heart of this cluster of claims is Garrett's assertion that the witnesses against him lied. Without ever explaining exactly what portions of their testimony were false, Garrett goes on to contend that his attorney did not prepare for such eventuality, he did not successfully show by impeachment or otherwise that the witnesses were lying, and he did not object to their testimony.

Taking the last allegation first, it is elementary that one does not "object" to a witness's testimony on the ground that it is untrue. The credibility of witnesses and the weight to be given their testimony is a matter for the jury to decide based upon all the evidence in the case.

As for the other allegations concerning counsel's ineffectiveness vis-a-vis the Commonwealth's witnesses, a brief review of the facts is necessary.

The evidence established that in August of 1993, Garrett, Rebecca Duvall, Kenneth Lehtma, and Garrett's uncle (Sherill M. Garrett) went to Phoenix, Arizona, in Duvall's car. They returned several days later, accompanied by John Woodward, with more than five pounds of marijuana and about 500

"hits" of LSD. They were intercepted in Spotsylvania County by members of the area narcotics task force. Garrett jumped from the car and ran but was later apprehended. The others were arrested at the point of interception. Later, it was disclosed that Garrett's uncle had tipped off the police about the venture and about the group's route and time of return to Virginia.

The principal witnesses against Garrett at trial were Duvall, Lehtma, and Woodward. They testified that Garrett coordinated the trip to Arizona, contacted the source for the drugs in Arizona, and was in possession of the drugs during the return trip. Garrett's uncle did not testify.

Garrett says that his attorney led him to believe that the informant was Lehtma, not his uncle. He contends that his attorney did not call his uncle to testify for him and that if he had, the uncle's testimony would have contradicted the Commonwealth's witnesses.

In an affidavit attached to the respondent's motion to dismiss, Garrett's trial counsel emphatically denies that he told Garrett that Lehtma was the informant. He avows that he "specifically told" Garrett that his uncle was the informant.

Whether counsel told Garrett the identity of the informant, it is obvious from the record that counsel knew the identity of the informant and properly prepared for trial on the basis of that knowledge. Further, the court is of the opinion that counsel told Garrett, prior to trial, that the informant was his uncle.

Why would counsel call the police informant as a witness? Most of what he had told the police had been confirmed when the group arrived from Arizona on schedule in a vehicle matching the description he had given. Thus, any testimony that Garrett's uncle gave at trial surely would have implicated Garrett in the crimes as long as his testimony was consistent with what he told police while acting as informant. If, on the other hand, Garrett's uncle had attempted to exonerate Garrett by altering his account of events, his testimony would have been subjected to vigorous impeachment.

In any event, Garrett provides nothing but speculation and conjecture with respect to what his uncle would have said if counsel had summoned him to testify at trial. If the court conducted a plenary hearing now, three and a half years after the trial, Garrett's uncle's assertions about what he would have said if he had been called as a witness at trial would be, at best, suspect. On August 8, 1997, Garrett's uncle wrote a letter to this court under the style of this case in which he acknowledged that he "participated in [Garrett's] arrest and conviction." He said he had "information" about "the whole event." He asked the court to give Garrett "a chance to be heard." He concluded by alleging that the "information I obtain [sic] could prove justice has been

served for Joseph and the Commonwealth of Virginia." The enigmatic letter suggests nothing about any "information" Garrett's uncle may possess, which was not available to the jury, that could alter the outcome of the case.

Garrett's contention that his attorney did not properly cross-examine Duvall, Lehtma, and Woodward is belied by the record.

Garrett's contention that his attorney did not object to jury instructions tendered by the Commonwealth is belied by the record. Further, nothing in the record suggests that the court improperly instructed the jury regarding the legal principles applicable to the case. In his petition, Garrett does not point to any particular jury instruction to support his claim of ineffective assistance of counsel; instead, he merely says that his attorney did not object. That assertion, which the trial transcript demonstrates is untrue, is insufficient.

As for Garrett's claim that trial counsel did not do enough pretrial investigation and preparation, the petition contains only conclusory assertions, providing the court with nothing of substance to inquire into a plenary hearing. Further, the record indicates that counsel had adequately prepared for trial.

Finally, Garrett contends that his attorney conspired with the prosecutor to intentionally "sabotage" any chance of a fair trial. Nothing in the record supports such an extraordinary claim, and nothing in Garrett's petition creates even a reasonable suspicion that his attorney acted deliberately, in association with the prosecutor, to deny Garrett a fair trial.

### Prosecutorial Misconduct

Garrett's claim of prosecutorial misconduct is, in essence, the mirror image of his claim that his trial attorney conspired with the prosecution to deny him a fair trial. As noted above, nothing in the record supports such a claim, and nothing in Garrett's petition creates even a reasonable suspicion of such misconduct.

In his petition, Garrett contends that "on many occasions" the prosecutor told the jury that Garrett's uncle was a co-conspirator and a "material player in the preparation, planning and act of the alleged conspiracy," whereas she should have presented "the true fact" that Garrett's uncle was the informant. The trial transcript accurately reflects the prosecutor's presentation of evidence and argument at trial and establishes that Garrett's characterization of those matters is untrue. Further, it is axiomatic that the Commonwealth is not obligated to call its confidential informant as a witness at trial, especially where, as here, other members of the conspiratorial group were willing to testify against the defendant. With that principle in mind, it is clear that the

prosecutor did not mislead the jury — or Garrett, for that matter — or otherwise engage in improper conduct.

Garrett's assertions that the prosecutor knowingly withheld exculpatory evidence has no basis in fact. Those allegations are either conclusory or are belied by other allegations contained in the petition. For example, Garrett refers to a "ledger and address book." Actually, the ledger and book to which he refers are his own ledger and book. How the Commonwealth knew about them, what information they contained, and how that information would have been exculpatory are not explained. Further, it is unclear why those things could not have been disclosed to the jury by the defense if in fact they contained exculpatory evidence.

Garrett's contentions about the impropriety of various statements made by the prosecutor in her opening statement to the jury and in her closing argument are without merit.

## Insufficient Evidence

Garrett's assertion that the evidence at trial was insufficient for a conviction is not cognizable in a state habeas proceeding. *Pettus v. Peyton*, 207 Va. 906 (1967); *Collison v. Underwood*, 1 Va. App. 443 (1986). Further, it is obvious from the record that, if the jury believed the testimony of Garrett's compatriots, as the verdicts demonstrate that it did, there was ample evidence to support the convictions. Finally, appellate courts have refused appeals on the merits on two occasions, thereby confirming, at least implicitly, that the evidence was sufficient. In an unpublished opinion, the Court of Appeals said as much. Court of Appeals # 0728-94-2, February 27, 1995.

## Perjured Testimony

Garrett claims that Duvall, Lehtma, and Woodward gave perjured testimony against him at the trial. Because Garrett offers no particulars, there is no factual basis for such a contention and no reason why the court should conduct a plenary hearing to inquire further.

It was for the jury to decide whether the witnesses' testimony was credible and how much weight to give it, in whole or in part.

Garrett's related allegation that the prosecutor and defense counsel knew that the witnesses' testimony was false and deliberately allowed it to be given without impeachment has been addressed above.

### Other Due Process Violations

Garrett contends that his due process rights were violated because, *inter alia*, he was not advised of the charges against him before he waived extradition from Maryland. Garrett cannot challenge his Maryland extradition proceedings in a Virginia post-trial habeas proceeding.

Further Garrett says that he was not even advised of the charges against him until after his trial. That allegation is patently untrue. See transcript of arraignment, February 2, 1994.

### Conclusion

For the reasons explained, the respondents' motion to dismiss will be granted and the petition will be summarily dismissed, the court being of the opinion that no cognizable factual issue exists for which a plenary hearing is appropriate. The court has today entered the proposed final order tendered by counsel for the respondents with the motion to dismiss.