## CIRCUIT COURT OF FAIRFAX COUNTY

Michael L. Bonhom

    v.

Ronald Angelone et al.

March 19, 2002

Case No. (Law) 195016

BY JUDGE STANLEY P. KLEIN

This matter is before the court on the Respondents', Warden, Sussex One State Prison, and Ronald Angelone, Motion to Dismiss the Petition for Writ of Habeas Corpus filed by Petitioner Michael L. Bonhom, Sr. ("Bonhom"). Bonhom seeks release from his incarceration arising from the sentences imposed by this court in its final order entered February 27, 1996, convicting him of first degree murder and use of a firearm in the commission of a murder and sentencing him to life in prison plus three years. Respondents contend that when the allegations in Bonhom's Petition are considered in conjunction with the record in the underlying criminal case and the affidavits filed herein, there is no basis for the court to grant Bonhom the relief he seeks. In response, Bonhom has filed a Motion to Deny Respondents' Motion to Dismiss wherein he requests an evidentiary hearing to determine the sufficiency of the grounds contained in his Petition. After careful review of the pleadings and affidavits filed herein and the entire record of the underlying criminal case, the court concludes the Petition is without merit. Accordingly, Respondents' Motion to Dismiss is granted and the Petition is dismissed.

## I. *Background*

At trial, which commenced on December 18, 1995, the jury heard, *inter alia*, eyewitness testimony that on July 13, 1995, Bonhom met the victim Marcus Brumsy in the street, exchanged words with him, and then shot the victim in the head, killing him. The evidence also established that DNA consistent with the victim's and inconsistent with Bonhom's was detected on two twenty-dollar bills found on Bonhom after his arrest. In addition, shell casings found at the crime scene were similar to shell casings found in a vehicle previously driven by Bonhom. A firearms expert testified that both types of shell casings found by the police were fired from the same or a similar weapon.

After hearing the evidence, the jury returned verdicts of guilty against Bonhom on the charges of murder in the first degree and use of a firearm in the commission of a murder. This Court entered a final order pursuant to the jury verdicts on February 27, 1996, sentencing Bonhom to life imprisonment on the murder charge and three years on the firearm charge. At sentencing, Bonhom was advised of his right to appeal from the court's judgment. The court appointed R. Dean Kidwell and Clinton Middleton, then, the Fairfax Public Defender and Deputy Public Defender, to represent Bonhom in the event of an appeal.

On June 5, 1996, Bonhom's appeal of his convictions to the Virginia Court of Appeals was denied as untimely filed. Bonhom, thereafter, filed a

Petition for Writ of Habeas Corpus in the Supreme Court of Virginia on June 4, 1999, ("Initial Petition"), alleging, *inter alia*, that he had been denied his right to appeal. On October 7, 1999, the Supreme Court awarded Bonhom a delayed appeal and dismissed the remainder of the claims contained in the Initial Petition without prejudice. On April 26, 2000, the Court of Appeals of Virginia denied Bonhom's Petition for Appeal, and Bonhom's subsequent Petition for Appeal to the Supreme Court of Virginia was denied on November 14, 2000. Bonhom filed the instant Petition in this court on April 16, 2001. The Respondents' Motion to Dismiss and Bonhom's Motion to Deny were timely filed thereafter.

## II. *Bonhom's Claims*

In his petition, Bonhom claims multiple grounds for relief relating to alleged errors by the court at trial, the failure of the Commonwealth to turn over exculpatory evidence, violations of his due process rights, and the ineffective assistance of counsel.

Bonhom's eighteen claims are quoted from his Petition:

(1) "Petitioner counsel's representation was rendered ineffective, when defense counsel failed to object to perjured testimony offer by the commonwealth's witness;"

(2) "Petitioner counsel's representation was rendered ineffective, when defense counsel failed to object to the commonwealth witness in-court identification and testimony;"

(3) "Petitioner counsel's representation was rendered ineffective, when defense counsel failed to prefer the exculpatory 'DNA' Test Results by Forensic Scientist Carol A. Palmer, she clearly showed it was someone else DNA other then the victim's;"

(4) "Petitioner counsel's representation was rendered ineffective, when advising petitioner to allow the trial judge to privately converse with a juror in his chambers;"

(5) "Petitioner counsel's representation was rendered ineffective, by not objecting to perjured testimony and falsify documents presented to the jury to obtain a conviction;"

(6) "Petitioner counsel's representation was rendered ineffective, when defense counsel failed to investigate petitioner's case;"

(7) "Petitioner counsel's representation was rendered ineffective, when defense counsel failed to investigate what led to petitioner's arrest, who was accusing petitioner of such a crime, and why petitioner was not given the opportunity to confront his accuser;"

(8) "The Court violated petitioner's Due Process Rights, when denying defense motion to suppress a tainted photograph identification and testimony which derive from an out of court identification;"

(9) "The Court violated petitioner's Due Process Rights by denying defense motion to suppress evidence obtain from illegal search and seizure of petitioner's car;"

(10) "The Commonwealth violated petitioner's Due Process Rights by withholding exculpatory evidence;"

(11) "Petitioner counsel's representation was rendered ineffective by not objecting and denying petitioner the right to be tried by a fair cross-section of the community;"

(12) "Petitioner states that the false testimony and evidence used to obtain this conviction was unjust, thus violating petitioner's Due Process guaranteed by the 6th, 5th, and 14th Amendments of the United States Constitution;"

(13) "Petitioner states that if the false testimony and evidence were not used, no trier of facts could have found proof of guilt beyond a reasonable of doubt, thus petitioner's Due Process Rights would not have been violated;"

(14) "Petitioner counsel's representation was rendered ineffective, when defense counsel failed to object to insufficiency of evidence in support of a guilty verdict;"

(15) "Petitioner's conviction was manifest injustice due to the obvious insufficiency of the evidence in support of a guilty verdict;"

(16) "The trial court erred when it found the search and seizure of the Nissan 300ZX lawful, despite the lack of a warrant to seize the vehicle and the subsequent affidavit's failure to establish a nexus between the vehicle and the criminal activity in question;"

(17) "Petitioner counsel's representation was rendered ineffective, when he failed to ensure that petitioner's accuser was at petitioner's trial, therefore, denying petitioner his right to confront his accuser and due process of law;"

(18) "Petitioner counsel's representation was rendered ineffective, when he failed to investigate and subpoena Douglas Bonhom, Lorenzo Bonhom, and Debbie Campbell to testify."

This court will address each of these claims.

### III. *Analysis*

#### A. *The Function of Writs of Habeas Corpus*

The purpose of a writ of habeas corpus is to examine alleged jurisdictional defects that could establish the absence of legal authority to incarcerate a

habeas petitioner. *Brooks v. Peyton*, 210 Va. 318, 321, 171 S.E.2d 243, 246 (1969). "The court in which a writ is sought examines only the power and authority of the court to act, not the correctness of its conclusions, and the petition for a writ may not be used as a substitute for an appeal or writ of error." *Id.* at 321, 171 S.E.2d at 246 (citing *Council v. Smyth*, 201 Va. 135, 139-40, 109 S.E.2d 116, 120 (1959)). Except for challenges to the trial court's jurisdiction, no claim will be considered in a habeas petition if the petitioner had a full and fair opportunity to raise and have the claim adjudicated at trial or on appeal and failed to do so. See *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975); *Pettus v. Peyton*, 207 Va. 906, 911, 153 S.E.2d 278, 281 (1967); *Smyth v. Bunch*, 202 Va. 126, 131-32, 116 S.E.2d 33, 37-38 (1960); *Willoughby v. Smyth*, 194 Va. 267, 272, 72 S.E.2d 636, 639 (1952). Nor does a habeas proceeding present a petitioner a second opportunity to argue that the trial court committed error in the underlying criminal proceedings. *Council v. Smyth*, 201 Va. at 140, 109 S.E.2d at 120. The rationale underlying these principles is easily stated:

> No state is obliged to furnish multiple remedies for the same grievance. Most states, and with good reason, will not suffer a collateral attack such as habeas corpus to be used as a substitute for *or duplication* of the appeal. A state properly may deny habeas corpus to raise either state or federal issues that were or could have been considered on appeal.

*Brown v. Allen*, 344 U.S. 443, 541 (1953) (Jackson, J. concurring) (emphasis supplied). Accordingly, a habeas petitioner does not have standing to raise claims in a habeas action that could have been litigated in the underlying criminal case.

## B. *Rule Against Successive Petitions*

Claims set forth in a habeas petition may also be procedurally barred if they were not timely raised in any prior habeas petition filed by the same petitioner. Va. Code § 8.01-654(B)(2). That section, in pertinent part, provides that "no writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge of at the time of filing any previous petition." Va. Code § 8.01-654(B)(2). In *Dorsey v. Angelone*, the Virginia Supreme Court held that the petitioner's second habeas corpus petition was barred by § 8.01-654(B)(2) because the second petition raised issues that the first petition did not address and the petitioner was deemed to have had knowledge

of the facts giving rise to the issues raised in the second petition at the time he filed the first petition. *Dorsey v. Angelone*, 261 Va. 601, 604, 544 S.E.2d 350, 352 (2001). The Court rejected the petitioner's argument that as his first petition contained only a challenge to time computation for good-time credits and was subsequently withdrawn, the trial court erred in finding the second habeas petition to be a successive petition and thus procedurally barred. *Id.* The Court refused to distinguish between petitions alleging procedural as opposed to substantive claims and opined that:

> [T]he statutory language could not be more explicit; it means what it says. At the time of filing the initial petition, the prisoner must include "all" claims the facts of which are known to the prisoner. And, no habeas relief will be granted based upon "any" allegation the facts of which the prisoner had knowledge at the time of filing any previous petition.

*Id.*

Similarly, in *Dodson v. Director, Dept. of Corrections*, the Supreme Court held that the petitioner's allegations of ineffective assistance of counsel *at trial* were barred from consideration on a second habeas petition under § 8.01-654(B)(2) because the petitioner clearly had knowledge of the alleged ineffective representation at trial when he filed his original petition. *Dodson v. Director, Dept. of Corrections*, 233 Va. 303, 310, 355 S.E.2d 573, 577 (1987). The petitioner was, however, awarded a writ of habeas corpus on his claim for ineffective assistance of counsel *on appeal* because the court found petitioner did not have knowledge of its dismissal of his direct appeal at the time he filed his initial habeas petition. See *Dodson*, 233 Va. at 310, 355 S.E.2d at 577.

## C. Respondents' Assertion That Certain Claims Are Procedurally Barred

In the Motion to Dismiss, Respondents argue that Claims 8, 9, 10, 12, 13, 15, and 16 are procedurally barred because the alleged trial errors set out in those claims are not properly cognizable in a collateral habeas proceeding. Claims, 8, 9, 12, 13, 15, and 16 all relate to errors that this court allegedly made during the criminal trial. As these claims could have been (and may have been) raised by Bonhom on direct appeal, they are not cognizable in a habeas action. See *Dodson,* 233 Va. at 305, n. 4, 355 S.E.2d at 575, n. 4. Accordingly, these claims are denied.

However, the court declines to hold that claim 10 (alleging a due process violation arising from the Commonwealth's failure to turn over exculpatory evidence) is procedurally barred. In the Motion to Dismiss, Respondents argue that "this is a claim that could have been raised at trial or on direct appeal and is thus barred from habeas review." Motion to Dismiss at p. 10. Indeed, Virginia's appellate courts have resolved issues arising from *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny on direct appeal. See, e.g., *Cherrix v. Commonwealth*, 257 Va. 292, 302, 513 S.E.2d 642, 649 (1999); *Bramblett v. Commonwealth*, 257 Va. 263, 277, 513 S.E.2d 400, 409 (1999); *Lockhart v. Commonwealth*, 34 Va. App. 329, 344, 542 S.E.2d 1, 8-9 (2001). However, in each of those cases, all of the evidence relevant to the *Brady* claim was contained in the record on appeal. Here, the record of the underlying criminal case does not definitively establish that the evidence concerning the *Brady* issue alleged by Bonhom in claim 10 was part of the record on appeal. Moreover, but for the contents of the affidavits appended to Respondents' Motion to Dismiss, it is not entirely clear that Bonhom obtained the allegedly exculpatory information "in time for it to be used effectively by the defendant" at trial. *Bramblett*, 257 Va. at 277, 513 S.E.2d at 409. Respondents correctly note that in *Yeatts v. Murray*, 249 Va. 285, 455 S.E.2d 18 (1995), the Supreme Court held that affidavits may be considered by a habeas court in ruling on a motion to dismiss. However, the statutory authority for the Court's ruling, Va. Code Ann. § 8.01-660, allows the use of such affidavits "in the discretion of the court or judge before whom the petition is brought. . . ." In *Yeatts*, the Supreme Court quoted from its earlier decision in *Walker v. Mitchell*, 224 Va. 568, 299 S.E.2d 698, in articulating the rationale for allowing use of such affidavits in deciding motions to dismiss:

> Using affidavits where appropriate (Code § 8.01-660) or a plenary hearing when necessary (Code § 8.01-662), the parties can produce a complete record, one that will permit an intelligent disposition of the habeas petition both in the trial court and on appeal. Of course, if the record of the criminal trial is sufficient itself to show the merit or lack of merit of a habeas petition, the case may be determined upon that record alone. Code § 8.01-654(B)(4).

*Yeatts*, 249 Va. at 288, 299 S.E.2d at 699. This court declines to exercise its discretion to extend the use of affidavits, beyond the salutary purpose of amplification of the record to assure an "intelligent disposition of the habeas petition," to authorize their use in effecting procedural defaults which could

potentially defeat meritorious habeas petitions. Accordingly, this court finds that Claim 10 is not procedurally barred and will address it on its merits.

Respondents further assert that Claims 2 and 18 are barred pursuant to Va. Code § 8.01-654(B)(2), as they were not raised in Bonhom's Initial Petition. In Claim 2 of his Petition, Bonhom asserts his counsel was ineffective for failing to object to a witness's in-court identification and trial testimony because the witness was allegedly in the courtroom while another witness testified at a preliminary hearing. Claim 18 alleges that Bonhom's trial counsel was ineffective for failing to investigate and subpoena certain witnesses at trial. As contended by the Respondents, these claims were not included in Bonhom's Initial Petition filed with the Supreme Court of Virginia. Manifestly, these claims of ineffective assistance of counsel were known to Bonhom when he filed his Initial Petition and consequently cannot be raised in these proceedings. See Va. Code § 8.01-654(B)(2).

Notwithstanding this ruling, as Bonhom was sentenced to life in prison plus three years and may seek relief in the federal courts, this court will address the merits of claims 2 and 18 *infra*.

D. *Whether an Evidentiary Hearing Is Required*

Claims 1, 2, 3, 4, 5, 6, 7, 11, 14, 17, and 18 all allege ineffective assistance of counsel at trial. When a petitioner alleges ineffective assistance of counsel, a two-pronged test must be satisfied before relief can be granted. *Strickland v. Washington*, 466 U.S. 668 (1984). A habeas petitioner must establish both (1) that his attorney's conduct was deficient and (2) that the petitioner was actually prejudiced by his attorney's representation. See *Moore v. Hinkle*, 259 Va. 479, 527 S.E.2d 419 (2000). To establish deficient performance, the defendant must first demonstrate that his attorney's conduct "fell below an objective standard of reasonableness." *Moore*, 259 Va. at 487, 527 S.E.2d at 423 (citing *Strickland*, 466 U.S. at 688). " 'Judicial scrutiny of counsel's performance must be highly deferential' when an attorney's performance has been attacked as constitutionally ineffective." *Murray v. Griffith*, 243 Va. 384, 389, 416 S.E.2d 219, 221 (1992) (quoting *Strickland*, 466 U.S. at 689). The United States Supreme Court has articulated the following standard to be applied when conducting a *post hoc* assessment of an attorney's trial performance:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

> the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (citations omitted). As a result, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

In addition to establishing the ineffectiveness of counsel, a habeas petitioner must also prove "that he was actually prejudiced as a result." *Moore*, 259 Va. at 487, 527 S.E.2d at 423 (citing *Griffith*, 243 Va. at 388, 416 S.E.2d at 221). Actual prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Moore*, 259 Va. at 487, 527 S.E.2d at 423 (citing *Strickland*, 466 U.S. at 694).

The Supreme Court of Virginia has set a high bar for establishing actual prejudice. In *Moore v. Hinkle*, the Court found trial counsel's performance was deficient where, *inter alia*, counsel failed to put on *any* evidence at trial or during sentencing. 259 Va. at 488, 527 S.E.2d at 424. Despite this finding, the Court denied habeas relief because the petitioner failed to establish a reasonable probability that, but for his counsel's ineffective representation, a different outcome would have resulted. The Supreme Court noted that the petitioner relied merely on the facts that established his counsel's deficient performance and did not provide any "meaningful evidence" that he was prejudiced by that representation. 259 Va. at 492, 527 S.E.2d. at 426.

Bonhom seeks an evidentiary hearing prior to the court's determining the merits of his ineffective assistance and *Brady* claims. It is well settled that, if the allegations of illegality surrounding a petitioner's detention can be fully determined on the basis of recorded matters, a habeas court may rule on the petition based solely upon the record. Va. Code Ann. § 8.01-654(B)(4); *Yeatts v. Murray*, 249 Va. 285, 289, 455 S.E.2d 18, 21 (1995). For a writ of habeas corpus to be granted, the petitioner must allege facts which establish "probable cause to believe that he is detained without lawful authority." Va. Code Ann. § 8.01-654(A). It is elementary that a petition of this nature must allege facts

and that mere conclusions or opinions of the pleader will not suffice to make out a case. 39 C.J.S. 627; *Penn v. Smyth*, 188 Va. 367, 370-71, 49 S.E.2d 600, 601 (1948). In determining whether probable cause exists, Virginia courts have discretion in deciding when to grant evidentiary hearings. Va. Code § 8.01-654(B)(4); *Yeatts*, 249 Va. at 290, 455 S.E.2d at 21.

Where the "records of petitioner's criminal trials contain matters sufficient to refute the essential factual allegations of his habeas corpus petition," no evidentiary hearing is required. *Arey v. Peyton*, 209 Va. 370, 372, 164 S.E.2d 691, 693 (1968). Conversely, at least one court has held that if "nonfrivolous cognizable claims are asserted about factual matters outside the record, the court should conduct an evidentiary hearing." *Garrett v. Angelone*, 43 Va. Cir. 314, 315 (Spotsylvania County 1997). In addition, Virginia law is clear that affidavits filed in habeas proceedings may be considered in determining whether an evidentiary hearing is necessary. *Yeatts*, 249 Va. at 289, 455 S.E.2d at 21.

It would appear, however, that no specific test has been articulated in Virginia, as to how a habeas court should exercise its discretion in determining whether to grant a petitioner an evidentiary hearing, when the cognizable claims asserted relate to matters included in affidavits that are part of the record. This court believes that long-standing Virginia case law setting forth the standards to be applied when ruling on motions for summary judgment and motions to strike the evidence should be equally applicable here.

On a motion for summary judgment, the court must view the facts and adopt any inferences from those facts in the light most favorable to the nonmoving party, "unless the inferences are strained, forced, or contrary to reason." *Sloane v. General Motors Corp.*, 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995); see also *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 95, 546 S.E.2d 696, 699 (2001). Similarly, on a motion to strike, the court is also required to view the evidence in the light most favorable to the nonmoving party. *Bentley v. Felts*, 248 Va. 117, 119-20, 445 S.E.2d 131, 133 (1994) (holding that a motion to strike was properly denied where the evidence supported alternative factual findings).

Accordingly, this court holds that after full consideration of (1) the factual allegations set out in a petition for writ of habeas corpus and all reasonable inferences which flow therefrom; (2) the record of the underlying criminal proceedings; and (3) any affidavits submitted by the parties, a court determines that reasonable minds could differ as to whether the habeas petitioner is entitled to relief, the court should conduct an evidentiary hearing; if reasonable minds could not differ, then no plenary hearing should be held. The court will review each of Bonhom's remaining claims utilizing this standard.

E. *Merits of Petitioner's Claims*

1. *The Brady Claim (Claim 10)*

Bonhom asserts in Claim 10 that his due process rights were violated because the Commonwealth allegedly withheld exculpatory evidence. More specifically, Bonhom contends that the Commonwealth failed to disclose that a "forensic test" was performed on a weapon that was found by a jogger nearly two months after the murder and miles away from the murder scene.

The law requires the Commonwealth to provide a defendant with exculpatory evidence. Va. Code § 19.2-265.4; Va. Sup. Ct. R. 3A:11; *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, a defendant must show that the undisclosed evidence was exculpatory and material to the issues of either guilt or innocence or punishment. *Goins v. Commonwealth*, 251 Va. 442, 456, 470 S.E.2d 114, 124, *cert. denied*, 519 U.S. 887 (1996). Undisclosed evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Currie v. Commonwealth*, 10 Va. App. 204, 209, 391 S.E.2d 79, 82 (1990) (quoting *United States v. Bagley*, 473 U.S. 667, 668 (1985)).

Bonhom's *Brady* claim is without merit because the evidence in question is neither exculpatory nor material. As the record reflects, the weapon was recovered over a month after the shooting of Marcus Brumsy and miles away from the scene of the incident. The weapon was tested by the Fairfax County Police Department pursuant to standard operating procedures and was subsequently determined not to be the weapon involved in the killing of Marcus Brumsy. Results of a forensic test performed on a weapon not implicated in the death of Marcus Brumsy are clearly immaterial to the defense of Bonhom's case. Moreover, the affidavits submitted in this matter by trial counsel in the underlying criminal case establish that the allegedly withheld forensic testing information was in fact disclosed to defense counsel prior to trial. As such, no *Brady* claim could be viable. See *Bramblett v. Commonwealth*, 257 Va. 263, 277, 513 S.E.2d 400, 409 (1999) (holding that no *Brady* violation occurs when defendant obtains information in time to effectively make use of it at trial). Therefore Claim 10 fails on its merits.

2. *The Ineffective Assistance of Counsel Claims 1, 2, 3, 4, 5, 6, 7, 11, 14, 17, and 18*

The court will address the merits of each of Bonhom's ineffective assistance of counsel claims.

*Claim 1*

In Claim 1, Bonhom asserts that his trial counsel failed to object to "perjured testimony" from Thomas King, a witness for the Commonwealth. This claim lacks any substantive merit. Initially, there is no basis under Virginia law for an attorney to object to testimony because counsel contends it will be untruthful. Further, the record of the underlying criminal case and the affidavit of Mr. Kidwell belie any claim that the credibility of King's testimony was not attacked by Bonhom's counsel. As Mr. Kidwell explained in his affidavit, King was in fact cross-examined over the course of portions of two days and was forced to acknowledge that he was a twice-convicted felon. The jury was instructed by the court on the issues of witness credibility, consideration of prior inconsistent statements, and the effect of prior felony convictions. In addition, Bonhom presents no factual basis to conclude that a more effective attack on the credibility of King's testimony would probably have led to a different outcome at trial. As such, Bonhom's wholly conclusory allegations in Claim 1 fail to satisfy either prong of the *Strickland v. Washington* test. Hence, Claim 1 is denied on its merits.

*Claim 2*

In Claim 2, Bonhom alleges his trial counsel was ineffective for failing to object to the testimony and in-court identification of Bonhom by Francis Thompson because Thompson was allegedly present at Bonhom's preliminary hearing while another witness testified. The transcripts of the underlying criminal case, however, refute this allegation and establish that Thompson was in fact excluded from the courtroom and was not present during the preliminary hearing. The record reflects that Thompson testified to this fact at trial. Further, no authority supports the proposition that fundamental notions of due process are violated merely because a witness who identifies the defendant at trial was also present in the courtroom during the course of an earlier hearing when the defendant was present. See, e.g., *Townes v. Commonwealth*, 234 Va. 307, 331, 362 S.E.2d 650, 663 (1987); *Thomas v. Commonwealth*, 16 Va. App. 851, 859, 434 S.E.2d 319, 324 (1993). Claim 2 is without merit.

*Claim 3*

In Claim 3, Bonhom asserts that Mr. Kidwell was ineffective for failing to present "exculpatory" DNA test results. However, the record shows that defense counsel not only cross-examined the DNA expert regarding the

absence of petitioner's DNA on a twenty-dollar bill admitted into evidence but also argued this fact during closing argument. This claim also fails to satisfy either prong of the *Strickland* test and is denied on its merits.

### Claim 4

In Claim 4, Bonhom contends his attorney was ineffective for advising him to allow the court to speak in chambers with a juror who believed she had been approached the evening before by two people who were connected to the case. Initially, Bonhom presents no facts which could establish that he was prejudiced in any way by the court's *in camera* discussion with the juror. Further, the court advised Bonhom on the record that he had an absolute right to be present when the juror was questioned and Bonhom himself stated that he wished for the court to speak to the juror privately in chambers. As such, he cannot now complain that the court complied with his wishes. See *Anderson v. Warden*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981); see also *Robinson v. Deeds*, 51 Va. Cir. 218 (2000) (Klein, J.). This claim also lacks any merit.

### Claim 5

Here, Bonhom again alleges that his counsel was ineffective for failing to object to "perjured testimony." He claims that Officer Garman and the Commonwealth's ballistics expert erroneously led the jury to believe that a gun was never found in this case, when they knew that a gun had been recovered and tested. In fact, a firearm had been recovered miles away from the scene of this incident, well over a month after the murder. The gun was tested to determine if it had any connection to the murder and the tests established that it did not. Therefore, the testimony of these witnesses that no handgun had been recovered in this case did not constitute perjury. The firearm that Bonhom now focuses on was in no way relevant to the proceedings at trial, and counsel could not have been ineffective for failing to cross-examine about it.

Bonhom further argues that the photographs in Commonwealth's Exhibit 6 were "rearranged" by Officer Garman. It appears that Bonhom is claiming that his attorney was ineffective for failing to point out that the placement of these pictures in the exhibit was not consistent with the chronological order in which the pictures were taken. No authority requires that pictures be displayed in the same order in which they were taken. Claim 5 is without any merit.

*Claim 6*

In Claim 6, Bonhom asserts in a conclusory fashion that his trial counsel was ineffective for not investigating his case. Again, this ineffective assistance claim fails because it is merely conclusory and fails to assert with particularity how trial counsel's performance was deficient or how Bonhom was prejudiced as a result.

*Claim 7*

Here, Bonhom alleges in a totally conclusory fashion that his attorney was ineffective for (1) failing to investigate what led to his arrest, (2) who was accusing him of having committed the crimes, and (3) failing to afford him the opportunity to confront his accuser. In fact, the witnesses against him were presented at trial and Bonhom had a full and fair opportunity to face and have his attorneys cross-examine each of those witnesses at trial.

The Supreme Court of Virginia has recognized that "the compulsory process clause provides a defendant with government assistance in compelling the presence of favorable witnesses at trial." *Goins v. Commonwealth*, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). However, "this [compulsory process] right has never been extended to include the right to discover the identity of witnesses or to require the government to produce witnesses who might give exculpatory testimony" absent a showing of the materiality of the testimony on the issue of guilt or punishment. *Goins*, 251 Va. at 456-57, 470 S.E.2d at 124.

Further, the United States Supreme Court has explained that the Sixth Amendment provides a defendant a trial right "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination," *Ritchie*, 480 U.S. at 52; *Moses v. Commonwealth*, 27 Va. App. 293, 300, 498 S.E.2d 451, 455 (1998), but not a right to confront witnesses outside of trial. *Maryland v. Craig*, 497 U.S. 836, 849 (1990); *Moses*, 27 Va. App. at 300, 498 S.E.2d at 455. The Commonwealth is only required to provide a defendant with material exculpatory evidence, and "the mere possibility that 'undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense'." *Goins*, 251 Va. at 456, 470 S.E.2d at 124 (citing *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).

Bonhom essentially claims he was denied the right to learn the identity of his accuser and, as he never would have been identified as a suspect if his alleged accuser was not interviewed by the police, the failure to provide him

with the identity of his accuser amounted to a violation of his constitutional right to discovery. However, no right to such discovery exists. In *Pennsylvania v. Ritchie*, the United States Supreme Court held that a defendant was not entitled to pretrial discovery of investigation files containing statements by the victim and information about witnesses. See *Ritchie*, 480 U.S. at 53. Further, Rule 3A:11(b)(2) of the Rules of the Virginia Supreme Court explicitly excludes statements of prospective Commonwealth witnesses from the scope of Virginia's criminal discovery rules. See also *Hackman v. Commonwealth*, 220 Va. 710, 714, 261 S.E.2d 555, 558 (1980); *Moses*, 27 Va. App. at 300, 498 S.E.2d at 455. Moreover, Bonhom fails to demonstrate how the identity of his alleged accuser is either exculpatory or material or how the outcome of his trial would have been different had he been able to cross-examine his alleged accuser at trial, assuming that such an "accuser" was not one of the witnesses cross-examined at trial. Consequently, Claim 7 also lacks any substantive merit.

### Claim 11

In Claim 11, Bonhom contends his trial counsel was ineffective for failing to object to the alleged denial of his Sixth Amendment right to be tried by a fair cross-section of the community. Bonhom specifically claims that both the jury venire and the petit jury consisted entirely of Caucasian jurors and, as a result of this composition, he was denied his constitutional right to an impartial jury.

In order to establish a violation of one's constitutional right to a jury composed of a fair cross-section of the community, it must be demonstrated that a distinctive group was systematically excluded from the jury venire. *Watkins v. Commonwealth*, 238 Va. 341, 385 S.E.2d 50 (1989), cert. denied, 494 U.S. 1074 (1990). There is no constitutional requirement that a representative percentage of a minority group be a part of the jury venire. See *Chichester v. Commonwealth*, 248 Va. 311, 448 S.E.2d 638 (1994). According to Mr. Kidwell's affidavit, he does not recall the racial composition of either the venire or the petit jury. Nor does the record indicate the racial composition of the jury pool, the venire, or the petit jury.

Despite the lack of any evidence in the record to support his claim, Bonhom alleges that his counsel failed to challenge the jury selection process, thereby forfeiting his right to be tried by a fair cross-section of the community. In response to Bonhom's allegations, Mr. Kidwell asserts in his affidavit that he was unaware of any colorable "cross-section" objection that he could have made regarding the systematic exclusion of minorities from venire pools in

Fairfax County at the time this case was tried. Neither the recollections of trial counsel nor the trial record support a claim that any minorities were systemically excluded from the venire. In addition, under the *Strickland* standard, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. In order to hold that Bonhom's counsel's performance failed to meet the threshold established by *Strickland*, this court would necessarily have to rule that an attorney representing a minority defendant in a criminal case is required to object to the composition of the venire any time that counsel believes that the venire does not represent a fair cross-section of the community. Any such objection would, by necessity, also require counsel to fully investigate the *bona fides* of a claim of systematic exclusion. In over twenty-five years of involvement in the criminal justice system as an attorney and a judge, this court has only seen such an objection raised on one occasion. This court declines to establish any precedent requiring defense attorneys to investigate and present such claims, unless there exists a good faith basis to believe that a systematic exclusion of a segment of the community has occurred.

Further, the court rejects Bonhom's assertion that an all Caucasian jury would necessarily be biased against him because he is an African-American. The mere possibility that a petitioner suffered prejudice as a result of his attorney's alleged deficient performance is insufficient to state a claim for ineffective assistance of counsel; *actual* prejudice must be shown. *Strickland*, 466 U.S. at 688. Bonhom has alleged no facts to support a claim of actual prejudice. Hence, the court rejects Claim 11.

### Claim 14

Claim 14 alleges that Bonhom's trial counsel was deficient in failing to challenge the sufficiency of the evidence against him. It is apparent from the record that counsel did not move to strike the Commonwealth's evidence because the Commonwealth had, in fact, clearly established a prima facie case against the petitioner. Bonhom's allegations fail to demonstrate either how his counsel was unreasonable in making this decision or how he was actually prejudiced as a result. Claim 14 must therefore also fail.

### Claim 17

In Claim 17, Bonhom reiterates his allegation that his counsel was ineffective for failing to ensure that his "accuser" was present at trial. For the reasons previously set out in the court's analysis of Claim 7, this claim also lacks substantive merit and must also be denied.

*Claim 18*

Finally, Claim 18 also fails on the merits because it is conclusory in nature and fails to address how the testimony of the potential witnesses Bonhom lists in this claim would have resulted in a different outcome. In fact, after review of the entire record in this case, it appears highly likely that the testimony of these witnesses would have adversely affected Bonhom's defense at trial.

### III. *Conclusion*

This court finds that Claims 8, 9, 12, 13, 15, 16 are barred due to petitioner's lack of standing to assert them in a petition for writ of habeas corpus. Claims 2 and 18 are also barred pursuant to Virginia Code § 8.01-654(B)(2) and lack any substantive merit. Claim 10 fails to allege facts to support a due process violation pursuant to *Brady v. Maryland* and its progeny. Finally, after full consideration of the factual allegations set out in the petition and all reasonable inferences which flow therefrom, the record of the underlying criminal proceedings, and the affidavits of trial counsel and Mr. Bonhom, this court holds that reasonable minds could only conclude that Bonhom has failed to allege or establish any factual basis to support a finding of ineffective assistance of counsel under either prong of the *Strickland v. Washington* test for Claims 1, 3, 4, 5, 6, 7, 11, 14, 17, and 18.

As such, Bonhom is not entitled to a full plenary hearing. Accordingly, Respondents' Motion to Dismiss is granted and the Petition for Writ of Habeas Corpus is dismissed.

### *Order*

This cause came before the Court on Respondents' Motion to Dismiss. For the reasons set out in the Court's opinion letter dated March 19, 2002, the Respondents' Motion is granted and Petitioner's Petition for Writ of Habeas Corpus is dismissed with prejudice.