Present: Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

SYLVESTER MOORE

                                        OPINION BY
v.  Record No. 990912        JUSTICE LAWRENCE L. KOONTZ, JR.
                                         March 3, 2000
GEORGE M. HINKLE, WARDEN


        FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                F. Bruce Bach, Judge

    In this appeal from the denial of a petition for writ of

habeas corpus in the trial court, we primarily consider whether

an attorney's failure to prepare adequately for trial because of

professional and personal concerns constitutes a "conflict of

interest" with respect to his representation of the client,

resulting in a presumption of prejudice to the client, and

requiring that the conviction of the client be vacated.

                        BACKGROUND

    On March 18, 1996, the grand jury of the Circuit Court of

Fairfax County (the trial court) returned an indictment against

Sylvester Moore for the abduction of Nina C. Heckler with intent

to defile in violation of Code § 18.2-48.  On July 30, 1996, the

trial court conducted a jury trial on the indictment.  Moore was

represented by his retained counsel, Dominick A. Pilli.  Moore

elected not to testify or put on any other evidence at this

_____

        [1]Justice Compton participated in the hearing and decision of
this case prior to the effective date of his retirement on
February 2, 2000.

trial.  The jury was unable to reach a unanimous verdict and, consequently, the trial court declared a mistrial.  The case was continued for retrial on September 9, 1996.

In the six weeks between the mistrial and the scheduled retrial, Pilli devoted his time exclusively to other professional matters, travelling out of state on business "for another practice" during the first half of August.  While Pilli was out of state, his grandmother died.  Pilli delayed his return to Virginia for another two weeks, returning to Virginia on September 5, 1996.

During Pilli's absence, Moore repeatedly contacted Pilli's office by telephone, leaving messages for Pilli.  In these messages, Moore indicated that he believed he had a "valid defense" and that he wanted Pilli to prepare a motion to suppress a statement Moore had made to the police and a motion to exclude Moore's prior criminal record.  Moore further expressed a desire to present "his side of the story" through his own testimony.

On Friday, September 6, 1996, Pilli filed a motion for a continuance, asserting that he had not had time to prepare the motions Moore had requested or to discuss with Moore his desire to testify.  In arguing for the continuance, Pilli was candid in stating that his "family was more important" to him than his duty to Moore.  The Commonwealth opposed any continuance because

2

Heckler had moved to Texas and had to make special arrangements with her employer to return for trial.

The trial court denied the motion for a continuance, indicating that a written motion to suppress could be heard on the morning of trial. Pilli then stated that he would not be able to adequately represent Moore and requested to withdraw as Moore's counsel. The trial court indicated that his motion to withdraw could also be considered on the day of trial and that Pilli should "spend a good deal of the weekend working on the case."

On Monday, September 9, 1996, Pilli arrived late for court and again requested a continuance, asserting that he had not had time to prepare the suppression, exclusion, and withdrawal motions and had not been able to consult with Moore except briefly the previous day. Pilli further asserted that if the trial court would not grant the continuance, he would ask the trial court to permit him to withdraw because "Mr. Moore is not going to want me as his counsel." The trial court denied both the motion for a continuance and the motion to withdraw. Pilli then responded, "Your Honor, I'm not going to be able to do a trial today. I think it would be ineffective assistance of counsel for Mr. Moore." Pilli further stated that "emotionally and mentally, . . . I'm not prepared."

3

Thereafter, Moore, who was wearing jail clothing, was brought to the courtroom. The trial court asked if he had been given the opportunity to dress in street clothes, and Moore responded that he "would like to address the court." Moore contended that he had not dressed in street clothes because "Mr. Pilli wasn't all for my case." Moore then asked the trial court to permit Pilli to withdraw and appoint new counsel because "I ain't getting no fair trial, cause he's not ready."

The trial court asked Pilli to explain again why he was not prepared for trial. Pilli reiterated that his "unique practice" required him to travel and that following the death of his grandmother he had focused his attentions on his personal life. Pilli indicated that when Moore had contacted him about the case, Pilli had told Moore, "Mr. Moore, at this time I just don't care." Pilli further told the trial court that "I still don't [care] right now . . . . I cannot sit down right now and just concentrate on this case."

The trial court denied Moore's motion, stating that neither Moore nor Pilli had adequately explained why Pilli would not be able to represent Moore in a retrial of a case Pilli had tried only six weeks before. Pilli again asserted that "I cannot have a trial today . . . I just can't do a trial today." The trial court indicated that Pilli was "verging right on the border of contempt." After another extended colloquy between Pilli and

the trial court, Pilli concluded by stating "Mr. Moore does not want me to represent him." The trial court indicated that it would not change its prior ruling and that the matter would have to be resolved on appeal.

After Moore entered a plea of not guilty, he again told the trial court that he was not satisfied with Pilli's representation and that he was not ready for trial. The trial court proceeded with the trial. Pilli actively participated in the voir dire of the potential jurors and made an opening statement. The Commonwealth called Heckler as its first witness. During the direct examination of Heckler, Pilli raised an objection to certain aspects of her testimony. The trial was recessed for the day before the conclusion of the Commonwealth's direct examination of Heckler.

The following morning, Pilli was again late for court. When the trial court requested an explanation, Pilli asserted that he "had five cases to get continued this morning" and complained that the trial court was not sympathetic to his circumstances, stating, "I'm about at the edge with you. I'm trying to be proper. I know I'm stepping on the bounds, but I did . . . ." At that point, the trial court interrupted Pilli and held him in summary contempt of court.

The trial continued, with Pilli again actively participating in cross-examination of Heckler and the

Commonwealth's other witnesses. The evidence as developed at trial showed that Moore, a stranger to Heckler, had entered her vehicle while she was stopped at a gasoline station. Although Heckler screamed for him to get out of the car, Moore refused. Heckler drove for several blocks hoping that Moore would then leave the car. Heckler stopped at another gasoline station, got out of her car, and demanded that Moore leave the vehicle. Moore responded that she should "[g]et back in the car, or I'm going to kill you." Heckler obeyed and after driving several more blocks, Moore grabbed Heckler's thigh and told her that he planned to engage in sexual activity with her.

Heckler was ultimately able to escape from Moore by feigning acquiescence and then taking refuge in the home of a stranger who assisted her in calling the police. Moore attempted to follow Heckler inside this home, but was arrested outside the home by police responding to Heckler's call. In a statement to police, Moore admitted that he had "been smoking marijuana and drinking and that he just got into the car to get himself together." Moore denied touching Heckler and making sexually suggestive comments to her.

At the conclusion of the Commonwealth's evidence, Pilli made a motion to strike the Commonwealth's evidence, which was denied. Pilli then indicated that the defense would not present any evidence. Pilli offered jury instructions, opposed the

6

Commonwealth's instructions, and made a closing statement to the jury.  After the jury returned a verdict against Moore, the Commonwealth, without objection, presented evidence of Moore's prior criminal record.  Pilli presented no evidence during the sentencing phase, but did argue to the jury that Moore was a "productive citizen" and that the jury should impose a lenient sentence.

The jury returned a verdict for life imprisonment.  The trial court confirmed the verdict and sentenced Moore to a term of life imprisonment, suspending all but ten years of the sentence.

Moore filed an appeal in the Court of Appeals of Virginia asserting, inter alia, that the trial court erred in denying the two motions for continuances and that Pilli had been ineffective as counsel.  The Court of Appeals refused Moore's petition with respect to the continuances issue, holding that "[d]espite [Pilli's] assertion that he was unprepared for trial, he never demonstrated how the circumstances had changed after having represented [Moore] at trial six weeks earlier . . . [Pilli] did not proffer the evidence he claimed [Moore] wanted him to present at the second trial, nor did he vouch how that evidence might affect his representation of [Moore]."  The Court further noted that claims of ineffective assistance of counsel may not be raised on direct appeal.  Although Moore was awarded an

7

appeal on another issue, he subsequently sought to withdraw his appeal, and the appeal was ultimately dismissed for failure to file an opening brief.

On October 26, 1998, Moore filed a pro se petition for a writ of habeas corpus in the trial court. In a supporting brief, Moore asserted that Pilli's representation of Moore had been adversely affected by a "conflict of interest" as a result of Pilli's having devoted his time between Moore's first and second trial to other professional and personal matters.[2] Moore contended that Pilli's efforts on Moore's behalf in the second trial fell below the acceptable standard for effective assistance of counsel, and, since the ineffective representation arose from a conflict of interest, no showing of actual prejudice to his case was required to establish that he had not received a fair trial. Moore further contended that if a showing of prejudice was required, Pilli's failure to counsel Moore about his right to testify or to prepare him to testify, Pilli's failure to prepare and present the motions to suppress Moore's statement to the police and to exclude his prior

---

[2]In the petition, Moore also made reference to the fact that on January 9, 1998, in response to a complaint filed by Moore, the Virginia State Bar took disciplinary action in the form of a private reprimand with terms against Pilli. We note, however, that a determination that a disciplinary rule has been violated does not in itself establish that the conduct in question fell below the constitutional standard for effective assistance of counsel. Jones v. Barnes, 463 U.S. 745, 753 n.6 (1983).

8

criminal record, Pilli's failure to conduct "meaning[ful] cross-examination of the complaining witness," and Moore's loss of opportunity to appear before the jury in street clothes, were all inherently prejudicial to Moore's case.[3]

The Commonwealth responded to Moore's petition by filing a motion to dismiss. Without conceding that Pilli's representation of Moore was ineffective, the Commonwealth contended that there was no "conflict of interest" in Pilli's representation of Moore since both were united in their request for a continuance and Moore voiced no objection to Pilli's continuing representation if that continuance were granted. The Commonwealth further contended that if Pilli's representation was nonetheless ineffective, Moore had failed to demonstrate actual prejudice by showing that the motions to suppress Moore's statement to the police and to exclude his prior criminal record were meritorious. Similarly, the Commonwealth contended that Moore failed to proffer the evidence he would have given if allowed to testify, or what other evidence Pilli might have developed on cross-examination of the Commonwealth's witnesses or by direct examination of witnesses not called. The

---

[3]Throughout these proceedings, Moore did not proffer any evidence to support his requested motions to suppress his statements to the police or to exclude his prior criminal record or in support of his "valid defense" that had not been advanced during the first trial.

9

Commonwealth did not address Moore's contention that appearing in jail clothing was prejudicial to his case.

On February 9, 1999, the trial court granted the Commonwealth's motion to dismiss. In doing so, the trial court conducted an independent review of the trial record, but did not hold an evidentiary hearing. In the order dismissing the petition, the trial court incorporated into the record by reference the record of Moore's second trial. This appeal followed.

DISCUSSION

In order to prove a claim of ineffective assistance of counsel, the defendant must first demonstrate that his attorney's conduct "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Furthermore, the defendant bears the burden of showing not only that his counsel's performance was deficient but also that he was actually prejudiced as a result. Murray v. Griffith, 243 Va. 384, 388, 416 S.E.2d 219, 221 (1992). In order to establish prejudice, the evidence must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, prejudice will be presumed where "an actual conflict of interest adversely affected [the] lawyer's performance." Cuyler v.

10

Sullivan, 446 U.S. 335, 350 (1980).  An actual conflict of interest exists when the attorney's interests and the defendant's interests "diverge with respect to a material factual or legal issue or to a course of action."  Id. at 356 n.3.

A. Pilli's Conduct as an Attorney

When a petition for a writ of habeas corpus raises the question of ineffective assistance of counsel, the initial inquiry must be whether the attorney's representation was so deficient as to fall below the minimum acceptable standard of care and skill which a reasonably competent attorney would exercise under the factual circumstances of the particular case.[4] The Commonwealth contends that under the standard discussed in Strickland, Moore has failed to establish that Pilli's representation was deficient.  We disagree.

---

[4]The Commonwealth contends that Moore failed to raise the issue of whether Pilli's representation of Moore constituted ineffective assistance of counsel in the absence of a conflict of interest within the question presented by his petition for a writ of habeas corpus.  However, Moore's claim of prejudice arising from a conflict of interest necessarily includes a claim of ineffective assistance of counsel generally.  Moreover, the thrust of Moore's argument in his supporting memorandum clearly implicates the alternative theories of prejudice arising from a conflict of interest and actual prejudice, the Commonwealth responded to both of these arguments in its motion to dismiss, and the trial court ruled on each theory when granting the motion to dismiss.  Accordingly, we hold that Moore adequately preserved both issues for appeal, and we will address both issues in this opinion.

In Strickland, the Supreme Court said that "the defendant must show . . . that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The Court cautioned, however, against second-guessing counsel's representation through hindsight. Instead, the Court stated that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Furthermore, the Court recognized that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

Here, the record clearly demonstrates that Pilli's conduct prior to the retrial fell well below any acceptable standard of reasonable and adequate preparation for trial. Although Pilli's desire to attend to his other area of practice and the unforeseen family responsibilities that arose thereafter were understandable impediments to his ability to give his full attention to Moore's case, the fact remains that until four days prior to the retrial Pilli had no direct communication with Moore and had done nothing to prepare for the retrial. Moreover, despite the trial court's willingness to allow Pilli to prepare the suppression and withdrawal motions over the

12

intervening weekend and to argue them prior to trial, Pilli made no effort to take advantage of this opportunity. These tasks are clearly within the ability of a reasonably competent attorney. Pilli's explanation for his lack of conscientiousness does not excuse his failure to comport with minimal professional standards.

Similarly, despite the fact that Pilli actively participated in the trial as it developed, the record demonstrates that Pilli did not represent Moore in accordance with Moore's wishes. Nothing in the record suggests that Pilli's failure to present the requested motions or to call Moore to testify on his own behalf resulted from strategic decisions made by Pilli. Rather, as Pilli's and Moore's own comments demonstrate, Pilli simply had no regard for Moore's requests and no desire to do more than "go through the motions" of representing Moore during the trial.

Based on the foregoing facts, we conclude that Pilli's actions were not acceptable conduct for an attorney and amounted to a deficient representation of Moore during his second trial.

B. The "Conflict of Interest" Issue

As noted above, to prevail on the constitutional claim of ineffective assistance of counsel, Moore must demonstrate that Pilli's deficient conduct resulted in prejudice to him, either because it arose from an actual conflict of interest or because

13

the failure to present evidence or to prevent the Commonwealth from presenting evidence would have altered the jury's verdict. Moore first contends that Pilli's attention to other matters, professional and personal, constitutes a "conflict of interest" which gives rise to the presumption of prejudice.  We disagree.

An actual conflict of interest exists where counsel has responsibilities to other clients or personal concerns that are actively in opposition to the best interests of the defendant. See Strickland, 466 U.S. at 692; Cuyler, 446 U.S. at 349-50.  An actual conflict may arise, for example, in the circumstance of counsel's representation of more than one defendant in connection with the same criminal charge, see, e.g., Cuyler, 446 U.S. at 348; Holloway v. Arkansas, 435 U.S. 475, 482 (1978), or where a defendant's counsel has a professional relationship with the prosecution.  See, e.g., United States v. Goot, 894 F.2d 231, 236-37 (7th Cir.), cert. denied, 498 U.S. 811 (1990).

Nothing in the record suggests that Pilli's other practice obligation or his family responsibilities conflicted with his representation of Moore in the sense that these matters were in opposition to the best interests of Moore.  Rather, these were matters that simply competed for Pilli's time.  In this respect, Pilli is no different from any other attorney who must manage professional and personal responsibilities.  The mere fact that an attorney fails to properly manage his time, resulting in the

14

interests of some clients being addressed to the detriment of others or the interests of all being subordinated to the attorney's personal concerns, does not give rise to an "actual conflict of interest" in the context of a claim of ineffective assistance of counsel.

Moreover, while such mismanagement may give rise to a possible disciplinary complaint against the attorney, an attorney's desire to protect himself against a later charge of ineffective assistance of counsel, standing alone, does not constitute a per se conflict of interest. See O'Dell v. Commonwealth, 234 Va. 672, 688, 364 S.E.2d 491, 500, cert. denied, 488 U.S. 871 (1988); Carter v. Commonwealth, 16 Va. App. 42, 47, 427 S.E.2d 736, 740 (1993). Here, the record demonstrates that Pilli was fully cognizant of the possibility that he might be subject to a charge of ineffective assistance of counsel by Moore, and, accordingly, there can be no presumption that Pilli would have acted to conceal his alleged misbehavior to Moore's detriment. See Carter, 16 Va. App. at 47, 427 S.E.2d at 740. To the contrary, Pilli was wholly forthcoming to both Moore and the trial court in expressing his belief that he was not able adequately to represent Moore.

Accordingly, we hold that Moore has failed to demonstrate that Pilli had an actual conflict of interest that would give

15

rise to a presumption of prejudice to the outcome of Moore's second trial.

## C. Actual Prejudice

Finally, Moore contends that, even if Pilli's deficient representation did not arise from an actual conflict of interest, the record supports a finding that Moore was actually prejudiced by Pilli's representation. We disagree.

Moore's burden in the trial court was to show that there was a "reasonable probability" that but for Pilli's deficient representation the outcome of the trial would have been different. In order to demonstrate this reasonable probability, a petitioner must not simply indicate what actions a competent attorney would have taken on his behalf, but also show that the impact of those actions would almost certainly have resulted in the reduction of the charge against him or in his acquittal.

Moore first points to Pilli's failure to prepare for trial and to meet with him at length. As discussed above, this lack of diligence on Pilli's part contributed to his inability to provide Moore with effective representation. However, these failures do not in and of themselves demonstrate prejudice to Moore's case. The record must show what a reasonably competent attorney would have accomplished by avoiding them.

Moore contends that had Pilli adequately prepared for trial and consulted with Moore, Moore would have been able to testify

16

in his own behalf.  However, the record is devoid of any evidence or proffer of what Moore would have testified had he decided to do so.  The record contains only the bare assertion that Moore believed he had a "valid defense" and wanted to tell the jury "his side of the story."

During oral argument, Moore's counsel conceded that the record was insufficient to establish that Moore might have given credible testimony to rebut the Commonwealth's evidence. Counsel asserted, however, that a reasonable inference from the record would be that Moore would have, at a minimum, affirmatively stated his innocence and that this testimony might have influenced the jury in his favor.  However, the wholly speculative nature of what effect such testimony might have had on the jury, being nothing more than a reiteration of Moore's plea of not guilty, is so remote as to fall well short of the standard of "reasonable probability" needed to find actual prejudice to the outcome of Moore's trial.

Moore further contends that he was prejudiced by appearing in jail clothing rather than in street clothes.  Moore asserts that having lost confidence in his attorney, his decision to forego appearing in street clothes arose from Pilli's ineffective representation.  Although the Commonwealth failed to address this issue at trial or on appeal, the record is clear that Moore was afforded the opportunity to change into street

17

clothes, but voluntarily declined to do so. Regardless of his motivation for so doing, under the "invited error" doctrine Moore may not benefit from his voluntary choice to place himself at a disadvantage. See, e.g., Saunders v. Commonwealth, 211 Va. 399, 400, 177 S.E.2d 637, 638 (1970); Clark v. Commonwealth, 202 Va. 787, 791, 120 S.E.2d 270, 273 (1961); Hundley v. Commonwealth, 193 Va. 449, 454, 69 S.E.2d 336, 339 (1952).

In the concluding paragraph of his brief, Moore recounts without elaboration Pilli's other failures as counsel, including the failure to file the suppression motion, the lack of "meaningful cross-examination" of the victim, and the failure to present any evidence during the sentencing phase of the trial. In each of these instances, the record contains nothing from which we can determine what the content or import of these actions would have been had Pilli carried through with Moore's instruction to oppose the introduction of his statement, pursue a more vigorous cross-examination, or put on evidence relevant to sentencing. In short, Moore relies on the facts that establish Pilli's deficient representation, rather than pointing to any meaningful evidence that he was prejudiced by that representation.

The Commonwealth's evidence at trial fully supports the jury's verdict, and nothing in the record of the subsequent habeas corpus proceeding contradicts that evidence.

18

Accordingly, we hold that Moore has failed to establish that Pilli's deficient representation prejudiced his case such that there was a "reasonable probability" that the outcome of the trial would have been different.

CONCLUSION

For these reasons, we hold that the trial court did not err in dismissing Moore's petition for writ of habeas corpus. Accordingly, the judgment will be affirmed.

<u>Affirmed</u>.