## CIRCUIT COURT OF WISE COUNTY

Merry Christine Pease

    v.

Patricia L. Huffman, warden,
Federal Correctional
Center for Women

July 15, 2005

Case No. CL04000218-00

BY JUDGE JOHN C. KILGORE

    This matter is before the Court upon the Petition of Merry Christine Pease, Inmate No. 329841, for a writ of habeas corpus, alleging that she is being unlawfully detained due to being denied a constitutionally fair trial. In support of the position that her convictions for second degree murder and use of a firearm in the commission of a felony are constitutionally flawed, Petitioner relies upon claims of prosecutorial misconduct, ineffective assistance of counsel, and after-discovered evidence.

After *ore tenus* argument by counsel and following a review of the pleadings and exhibits thereto and a review of the pertinent portions of the record and transcripts in the cases of *Commonwealth of Virginia v. Merry Christine Pease*, Wise County Case Nos. F94-112 and F98-319, which have been ordered a part of the record in this proceeding, the Court issues the following findings of fact and conclusions of law.

The procedural history of this case, completely and accurately set forth in the Respondent's Motion to Dismiss, is as follows.

## Procedural History

Merry Christine Pease was indicted in this Court in April 1994, for the November 18, 1993, murder of her husband, Dennis Pease, and the use of a firearm in the commission of that murder. She was convicted by jury of second degree murder and the gun charge and later sentenced to twenty-three years in prison with ten of those years suspended.

In 1997, the Court of Appeals reversed that conviction, quashed the indictment, and remanded the case based on the Commonwealth's Attorney's improper appearance before the grand jury which indicted Pease. *Pease v. Commonwealth*, 24 Va. App. 397, 482 S.E.2d 851 (1997).

Pease was re-indicted, and special prosecutors, Greg Edwards and Don Williams, were appointed to prosecute her. In 1998, those prosecutors successfully moved the Court to *nolle prosequi* the case after it was learned that a medical examiner's document suggesting that Dennis Pease may have committed suicide existed had not been disclosed to the defense in the past.

By order entered August 7, 1998, this Court appointed Timothy McAfee, Esquire, as special prosecutor. He was the same attorney who, as Commonwealth's Attorney, had improperly appeared before the grand jury in 1994 and who had been the prosecutor at the original trial. In December 1998, another grand jury again indicted Pease for second degree murder and use of a firearm in the killing of her husband, Dennis Pease.

Prior to trial, the defense filed a motion to disqualify McAfee as special prosecutor and a motion to dismiss the indictment on double jeopardy grounds. The court held evidentiary hearings on those motions on March 10, 1999, and February 3, 2000, and denied both motions. With McAfee prosecuting the case, Pease was again convicted by a jury of second degree murder and use of a firearm in the killing of her husband, Dennis Pease. She was sentenced to twenty years in prison for second degree murder with five years suspended and to three years in prison for use of a firearm in commission of a felony.

On direct appeal, Pease raised the following assignments of error:

(1) The Circuit Court erred in failing to dismiss her indictment on double jeopardy grounds in that McAfee's misconduct before the first grand jury provided the occasion for the reversal on the earlier appeal.

(2) The Circuit Court erred in failing to disqualify McAfee as special prosecutor by the pendency of a bar complaint against him based on his handling of this case, and consequently, the court should have disqualified him and dismissed the indictment.

(3) The evidence was insufficient to convict Petitioner.

The Court of Appeals granted Pease's petition on all three grounds. After full briefing and oral argument, two judges of a three-judge panel, with Judge Bumgardner dissenting, found the evidence insufficient to convict her and reversed and dismissed her convictions.

The Commonwealth obtained a rehearing *en banc*. In that proceeding, Judge Bumgardner wrote the majority opinion, finding the evidence sufficient to convict Pease, and rejected her other claims on their merits. *Pease v. Commonwealth*, 39 Va. App. 342, 573 S.E.2d 272 (2002) (*en banc*).

Pease appealed to the Supreme Court of Virginia, and that court likewise granted full briefing and oral argument. On October 31, 2003, the Supreme Court affirmed the Court of Appeals *en banc* opinion for the reasons stated in that opinion. *Pease v. Commonwealth*, 266 Va. 397, 588 S.E.2d 149 (2003).

*Petitioner's Claims in Support of Writ of Habeas Corpus*

Ms. Pease, Petitioner, raises the following claims in support of her Petition for Writ of Habeas Corpus. Each of the claims can be disposed of on the basis of the trial record, pleadings, and affidavits. Therefore, the Court finds no plenary hearing is necessary. *Yeatts v. Murray*, 249 Va. 285, 455 S.E.2d 18 (1995); Virginia Code § 8.01-654(B)(4).

In paragraph 7(A)1 of the Petition for Writ of Habeas Corpus, Petitioner alleges prosecutorial misconduct consisting of the Commonwealth's Attorney's improper appearance before the grand jury in the case of *Commonwealth v. Merry Christine Pease*, Wise Circuit Court Case No. F94-112. See also *Pease v. Commonwealth*, 24 Va. App. 397 (1997), which

Petitioner alleges resulted in prejudice due to a claim of double jeopardy in the fact Petitioner was retried for the same offense.

In paragraph 7(A)3, Petitioner further contends that Special Prosecutor McAfee vindictively prosecuted Petitioner in her second trial (Wise Circuit Court Case No. F98-319) in order to vindicate himself from a pending ethical complaint related to Petitioner's first trial.

Each of these claims of the Petitioner were raised, fully addressed, and resolved in Petitioner's second trial, as well as on the direct appeal of her conviction. *Pease v. Commonwealth*, 39 Va. App. 342, 347-49 (2002); *Pease v. Commonwealth*, 266 Va. 397 (2003). The determination of these issues on the merits by the Commonwealth's appellate courts is conclusive, and thus the foregoing claims are not cognizable and cannot support issuance of a writ of habeas corpus in this proceeding. *Henry v. Warden*, 265 Va. 246, 248 (2003), citing *Hawks v. Cox*, 211 Va. 91 (1970).

In addition to the claims of prosecutorial misconduct, Petitioner alleges in paragraph 7(A)2 that the trial court's appointment of McAfee as special prosecutor by order dated August 7, 1998 (Respondent's Motion to Dismiss, Ex. A), was contrary to the provisions of Virginia Code § 19.2-155. In paragraph 7(A)3, Petitioner further asserts that, due to the alleged failure of the trial court to comply with § 19.2-155, all actions of Special Prosecutor McAfee were taken without legal authority and therefore void.

Petitioner's defense counsel in her second trial moved the trial court to disqualify Special Prosecutor McAfee on numerous grounds. (Transcript of Petitioner's Motion to Disqualify, 2/3/00.) In ruling on the motion, the trial court set forth its considerations and actions taken leading up to the ultimate appointment of Special Prosecutor McAfee, by order dated August 7, 1998. (2/3/00 Tr. 237-249.) Petitioner's trial counsel, Mr. Gerald Gray and Mr. Robert Galumbeck, filed the motion to disqualify the Special Prosecutor, and both were present for the February 3, 2000, hearing on the motion. Both men are extremely qualified, intelligent, and proficient attorneys. This fact was noted repeatedly by the trial court in the transcripts of the trial and is evident in their performance in this case. Petitioner's counsel were, thus, completely aware of the circumstances leading to the appointment of McAfee as Special Prosecutor. (2/3/00 Tr. 239-41.) Said counsel never raised any issue involving a failure of the court to comply with § 19.2-155 in its appointment of the special prosecutor. Likewise, this issue was not raised as an assignment of error on direct appeal. Claims of nonjurisdictional defects which could have been raised during a criminal trial or on direct appeal, but which were not raised and addressed at that time, are not cognizable in a habeas corpus proceeding. *Henry v. Warden*, 265 Va. at 248.

Petitioner does not allege, nor does she provide any authority for the proposition that failure to comply with § 19.2-155 constitutes a jurisdictional defect. Respondent relies on the cases of *Nelson v. Warden* and *Edwards v. Commonwealth*, 41 Va. App. 752, 763-65 (2003), arguing by analogy, that a court's failure to comply with § 19.2-155 would be insufficient to establish a jurisdictional defect. *Nelson v. Warden*, 262 Va. 276, 281 (2001). I agree, to the extent that failure to comply with the statutory requirements of § 19.2-155 would not affect the subject matter jurisdiction of the court. Thus, Petitioner's failure to raise this issue before the trial court and on direct appeal constitutes a waiver of any alleged error or any grounds of habeas corpus relief related to the appointment of Special Prosecutor McAfee. *Henry*, 265 Va. at 248; see also *Slayton v. Parrigan*, 215 Va. 27, 29-30 (1974).

Finally, the Court finds that the actions of the trial court in appointing Special Prosecutor McAfee were in compliance with the provisions of § 19.2-155. The trial judge provided a detailed account of his awareness of the requirements of § 19.2-155, his difficulty in acquiring an acting Commonwealth's Attorney to serve as special prosecutor when Edwards and Williams were ultimately appointed, and the court's considerations leading to the appointment of McAfee as special prosecutor. (2/3/00 Tr. 239-241.) The record clearly establishes the court's compliance with § 19.2-155.

Petitioner raises several claims under the heading of Ineffective Assistance of Counsel. In order for a writ of habeas corpus to issue, such claims must be supported by specific allegations of fact to establish both seriously deficient performance by counsel and actual prejudice resulting to the Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687-97 (1984).

The first prong of the two-pronged *Strickland* test requires a petitioner to affirmatively demonstrate that counsel made specific errors so serious that counsel was functioning below an "objective standard of reasonableness." *Id.* at 688-89. Additionally, *Strickland* cautions that not only must judicial scrutiny of counsel's performance be highly deferential, but also requires Petitioner to overcome a presumption that counsel's challenged actions "might be considered sound trial strategy." *Id.* at 694-95; citing *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955). In other words, the Petitioner must identify the acts or omissions of counsel that are alleged to fall short of reasonably effective assistance with sufficient specificity to enable the court to determine whether said acts or omissions fall outside the "wide range of professionally competent assistance." *Strickland*, at 690-91.

Furthermore, the second prong of the *Strickland* test requires the Petitioner to bear the burden of showing not only that trial counsel's performance was grossly deficient but also that the Petitioner was actually

prejudiced as a result. *Moore v. Hinkle*, 259 Va. 479, 487, citing *Murray v. Griffith*, 243 Va. 384, 388 (1992). To satisfy the second prong of the *Strickland* test, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland*, at 698. A reasonable probability is a probability which is sufficient to undermine confidence in the outcome. *Id*. See also *Moore v. Hinkle*, at 490-91. As the United States Supreme Court later amplified in its holding in *Kimmelman v. Morrison*, "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial. . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In paragraph 7(B)1 of the Petition for Writ of Habeas Corpus, Petitioner alleges counsel failed to fully investigate the Commonwealth's case against her and failed to determine if a defense could be developed. Petitioner further alleges that counsel was provided with numerous witnesses whom counsel failed to interview.

Respondent asserts that this ineffective assistance claim is fatally conclusory due to the failure of the petition to provide the names of specific witnesses or to proffer the substance of those witnesses' testimony, relying on *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990), cert. denied 111 S. Ct. 1639 (1991).

Petitioner's claim in paragraph 7(B)1 is fatally conclusory and insufficient to support issuance of a writ of habeas corpus. The Petition, similarly to the petition of *Bassette*, fails to provide a proffer of the alleged testimony of these witnesses and fails to advise what an adequate investigation would have revealed. *Id*. at 940-41. Additionally, Petitioner's trial counsel, Mr. Gerald Gray, provided an affidavit which is attached to Respondent's Motion to Dismiss as an exhibit. The Court is familiar with Mr. Gray and his professional reputation and finds his affidavit to be credible in all respects. Mr. Gray swears that he and his co-counsel, Mr. Galumbeck, "thoroughly investigated [Petitioner's] case and interviewed all witnesses [they] felt would be of assistance in the trial." (Gray Affidavit, Attachment to Respondent's Motion to Dismiss.) Petitioner's claim of ineffective assistance based on a general claim that additional witnesses should have been interviewed and/or called to testify fails to satisfy the first, performance, prong of the *Strickland* test, and thus is insufficient to support issuance of a writ of habeas corpus.

Paragraph 7(B)2 of the Petition for Writ of Habeas Corpus alleges ineffective assistance of counsel based upon Petitioner's trial counsel failing to call the Petitioner to testify in her second trial. Additionally, Paragraph 7(B)2 contains an allegation that counsel failed to call Larry Bush, Marlene Bush,

Chris Huff, and Ketzie Huff as witnesses in Petitioner's second trial. Petitioner alleges that the denial of testimony from these witnesses resulted in prejudice to her defense.

However, as with the claim in 7(B)1, the Petition fails to offer a proffer of the testimony of any of these witnesses. Therefore, the Court finds these allegations to be conclusory in nature and insufficient to support a writ of habeas corpus under the first prong of the *Strickland* test. See *Bassette*, 915 F.2d 932, 940-41.

The second, or prejudice, prong of the *Strickland* test requires Petitioner to establish prejudice by evidence showing that, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Moore v. Hinkle*, 259 Va. 479, 487 (2000), citing *Strickland*, 466 U.S. at 694. In failing to provide a proffer of testimony, the petition prevents the Court from determining whether Petitioner suffered actual prejudice from the failure to call these witnesses. Due to this failure, these claims fail to establish actual prejudice under the second prong of the *Strickland* test. Thus, the claims related to potential witnesses Larry Bush and the Huffs fail to establish ineffective assistance of counsel and cannot support issuance of a writ of habeas corpus.

Finally, affidavits of Petitioner's trial counsel, Gerald Gray, and of the Petitioner herself address the claims of Paragraph 7(B)2. In his affidavit, Mr. Gray states that counsel and Petitioner had numerous discussions regarding whether Petitioner would testify at her second trial. Mr. Gray states that Petitioner voluntarily decided she would not testify due to, among other factors, her "terrible" performance on the stand in her first trial. An additional consideration noted by Mr. Gray is the fact that, by testifying, Petitioner would have made admissible her potentially damaging prior statements for purposes of cross-examination. In support of Mr. Gray's affidavit, Respondent also offers a statement of the Petitioner. In this signed statement, Petitioner acknowledges that her decision not to testify was voluntary, was made after discussions with her trial counsel, and was based on a tactical decision. Petitioner's affidavit also indicated that it was her decision to rest her case without calling Larry Bush as a witness. (Attachment to Respondent's Motion to Dismiss.)

Based upon the Court's review of the record in both of the Petitioner's trials and the affidavits of Mr. Gray and the Petitioner, the Court finds that the claims in paragraph 7(B)2 also fail to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is ... the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." *Strickland* at

694-95, citing *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955). It is clear from the record and the affidavits that the decisions not to call Larry Bush or the Petitioner to the stand were reasonable strategic choices made after consultation with, and the consent of, the Petitioner. As such, these actions are insufficient to support the issuance of a writ of habeas corpus based upon ineffective assistance of counsel under the *Strickland* test.

Paragraph 7(B)3 of the Petition for Writ of Habeas Corpus re-alleges ineffective assistance of counsel on the basis of trial counsel's failure to call Marlene Bush to testify in Petitioner's second trial. In support of this claim, Petitioner does offer a proffer of the testimony of this witness. Petitioner proffers that Marlene Bush would testify that Renea Salyers tended to the wounds of the Petitioner after the shooting. Ms. Bush would purportedly testify that Ms. Salyers advised her that, while in her home tending to the Petitioner, she heard shots inside the Petitioner's residence.

Respondent contends that the proffered testimony of Ms. Bush would be inadmissible, hearsay testimony based upon the inability to offer this testimony to impeach Renea Salyers due to the failure of Ms. Salyers to testify during the Petitioner's second trial, and the inability to offer this testimony to impeach Rick Salyers under any evidentiary standard.

Petitioner's trial counsel, Gerald Gray, concurs with Respondent's contention that the failure of Renea Salyers to testify at Petitioner's second trial renders the testimony of Ms. Bush inadmissible. (See Gray Affidavit, p. 5, attachment to Respondent's Motion to Dismiss.)

Petitioner fails to offer to the Court any reasonable interpretation of a rule of evidence under which Ms. Bush's testimony would be admissible. Further, Petitioner fails to provide any exception to the hearsay rule that would apply to the proffered statements of Ms. Bush. Trial counsel's failure to offer what amounts to inadmissible testimony at trial cannot be said to be incompetent conduct that "fell below an objective standard of reasonableness" under the *Strickland* performance prong. *Strickland* at 688. Nor can such conduct be said to have actually prejudiced the Petitioner, as she was not entitled to have such inadmissible testimony heard by the trier of fact. *Strickland* at 694; see also *Lockhart v. Fretwell*, 506 U.S. 364, 372-74.

As the portion of the claim in Paragraph 7(B)3, relating to Ms. Bush's testimony, fails to meet either prong of the test for ineffective assistance of counsel under *Strickland v. Washington*, said claim is insufficient to support the issuance of a writ of habeas corpus.

Petitioner alleges in Paragraph 7(B)4 that her trial counsel was ineffective in failing to call as defense witnesses several forensic experts who would have "exonerated" the Petitioner. The Petition further alleges that trial

618

counsel assured Petitioner these experts would be called as witnesses in her trial. The Court has fully reviewed the affidavits and exhibits thereto, letters, curriculum vitae, and opinions of those proffered experts. Paragraph 7(B)4(a) proffers the testimony of Edward Whittaker, a putative expert in the fields of physical evidence analysis and crime scene reconstruction. Mr. Whittaker states that he testified in Petitioner's first trial, which resulted in a conviction that was reversed on grounds set forth *supra*. Mr. Whittaker further states that he engaged in "lengthy consultations" with Petitioner's trial counsel in preparation for her second trial. The substance of Mr. Whittaker's affidavit consists of his opinions that:

> 1. Dennis Pease shot his wife, with her grabbing the gun barrel, fought with her through the hallway and kitchen, thought he had killed her, relaxed as she fled, went to the bedroom window, watched her run the distance to the neighbors' house alive, angrily tore down the window curtains, drapes, and Venetian blinds, walked to the kitchen, shot himself, walked around considerably dripping blood for 25-35 feet, and then went into the living room and shot himself through the heart, fell, rolled over, and died; and
> 2. Self-inflicted "alibi gun shot wounds" are extremely rare – and through vital organs, they are non-existent.

Paragraph 7(B)4(b) and Exhibit 8 thereto proffers the testimony of putative expert Dennis L. McGuire. Mr. McGuire would purportedly testify that the injuries received by the Petitioner were inconsistent with self-inflicted alibi wounds. However, in his affidavit, Mr. McGuire states that he was asked to determine if the physical evidence depicted is consistent with the Petitioner's having shot herself and Dennis Pease. In response, Mr. McGuire opines that both the Petitioner and Dennis Pease were shot by Dennis Pease. He further states that he has never experienced or heard of a case of a self-inflicted alibi gunshot wound fired through the torso into vital organs.

Paragraph 7(B)4(c) and exhibit 9 thereto proffers the testimony of putative expert Joseph H. Davis, M.D., Forensic Pathologist. Mr. Davis states that he examined photos, videotapes, reports and sketches relating to the Petitioner's second trial. He does not indicate whether any or all of the information he relied upon was in fact admitted into evidence in Petitioner's second trial. Dr. Davis, in his affidavit, offers only the opinion that Dennis Pease shot both his wife and himself. In an attached letter to Mr. Whittaker, Dr. Davis ruminates on many issues related to the Petitioner's first trial,

including a detailed critique of the crime scene investigation and prosecution of Petitioner in the first trial. However, the only opinion to be found is Dr. Davis' conclusion that no authentic evidence of murder appears in the scene photographs he reviewed. Petitioner alleges failure to call said expert witnesses severely prejudiced the Petitioner. Respondent asserts that the failure of trial counsel to call these three putative experts cannot be the basis for issuance of a writ of habeas corpus on the ground of ineffective assistance of counsel. Respondent relies on the following arguments in support of its position.

First, Respondent contends that the opinions proffered by these experts would be inadmissible as evidence. With regard to the proffered testimony of Mr. Whittaker and Mr. McGuire, Respondent contends that the opinions consist of a conclusion as to the ultimate issue and are thus inadmissible. With regard to the proffered testimony of Dr. Davis, Respondent contends that, inasmuch as the ruminations contained in his letter to Mr. Whittaker offer an opinion, his proffered testimony relating to the significance of items of evidence, the location and direction of the shots fired, errors of the police in conducting the investigation, and allegations of prosecutorial misconduct are matters beyond his expertise as a forensic pathologist. Respondent concedes that Dr. Davis could possibly be qualified as an expert to testify as to descriptions of the wounds of Petitioner and Dennis Pease. However, Respondent contends this testimony would relate to facts not in dispute. Respondent re-asserts its contention, raised initially in response to the claims related to the testimony of Ms. Bush, that trial counsel cannot be held ineffective for failing to offer inadmissible evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

Additionally, Respondent contends that trial counsel's election not to call those putative experts was a tactical matter of trial strategy consigned to the professional judgment of counsel. In support of this contention, Respondent relies upon the affidavit of Petitioner's trial counsel, Mr. Gerald Gray.

In this affidavit, Mr. Gray states that neither he nor Mr. Galumbeck told Petitioner that any of those putative experts would be called to testify at trial. With regard to Mr. Whittaker, Mr. Gray states that he and co-counsel had serious concerns regarding both the admissibility of his opinions as well as his credibility and potential unpredictability. (Gray Affidavit, p. 5, Attachment to Respondent's Motion to Dismiss.) With regard to Mr. McGuire's affidavit, Mr. Gray states that he did not recall seeing any information from Mr. McGuire. However, after reviewing Mr. McGuire's affidavit, Mr. Gray states his belief that his testimony goes to the ultimate issue and would thus be

inadmissible. (Gray Affidavit, p. 5.) Mr. Gray further states that other expert witnesses, whose testimony was admitted into evidence, testified that the shootings were consistent with a suicide and attempted murder [of the petitioner].

Finally, Mr. Gray states that he and co-counsel chose not to call Dr. Davis as a witness because Dr. Masello, the Medical Examiner, testified as a defense expert that Dennis Pease's wounds were consistent with suicide and that Dennis Pease could have fired all three shots. Mr. Gray states that the decision not to obtain the testimony of independent forensic experts was based upon his opinion that the testimony of the Commonwealth's experts would be "helpful in many respects" and that "their testimony showed reasonable doubt as to Ms. Pease's guilt." (Gray Affidavit, p. 6.)

The question of whether trial counsel's failure to call the three above-referenced experts to testify was constitutionally deficient representation is also controlled by *Strickland v. Washington*, 466 U.S. 668 (1984). (The requirements of the two-pronged *Strickland* test of effectiveness of counsel, having been previously discussed at length, will not be restated here.) The opinions of Mr. Whittaker, Mr. McGuire, and Dr. Davis that Dennis Pease actually shot Petitioner and then himself are opinions on the ultimate issue in Petitioner's second trial. As such, these opinions would not be admissible. See *Jenkins v. Commonwealth*, 254 Va. 333, 336 (1997). (Expert opinion on an ultimate fact in issue is inadmissible in a criminal case because it "invades the province of the jury." *Llamera v. Commonwealth*, 243 Va. 262, 264 (1992)). Inadmissible testimony from these three purported experts is subject to the same limitations as the proffered inadmissible testimony of Ms. Bush. Thus, trial counsel's failure to offer what amounts to inadmissible testimony on the ultimate fact in issue at trial, likewise, cannot be said to be incompetent conduct that "fell below an objective standard of reasonableness" under the *Strickland* performance prong. *Strickland* at 688. Nor can such conduct be said to have actually prejudiced the Petitioner, as she was not entitled to have inadmissible testimony heard by the trier of fact. *Strickland* at 694; see also *Lockhart v. Fretwell*, 506 U.S. 364, 372-74 (1993). Therefore, as claims of constitutionally ineffective assistance of counsel, the failure to offer this opinion testimony fails to meet either prong of the *Strickland* test and is insufficient to support the issuance of a writ of habeas corpus.

Additionally, the Court finds that the affidavit of Petitioner's trial counsel, Mr. Gray, clearly indicates that the decision not to call Mr. Whittaker, Mr. McGuire, or Dr. Davis was the result of an intentional and reasonable trial strategy. Mr. Gray's affidavit explains the reasoning of trial counsel in reaching this decision. The justifications offered by Mr. Gray's affidavit are

coherent, reasonable, and indicated that counsel was, in Mr. Gray's view, acting in the best interests of the Petitioner. The Court's review of the record, Mr. Gray's affidavit and Respondent's brief makes clear that trial counsel successfully employed the testimony of the Commonwealth's experts in support of the defense theory that Dennis Pease shot his wife and then shot himself. In addition, trial counsel called Lyle Shaver, an expert latent fingerprint examiner, who testified that neither Petitioner's fingerprints nor evidence of removing prints were found on the handgun. (Tr. 1351-52.) Finally, trial counsel called Dr. Masello, an Assistant Chief Medical Examiner, who testified that Dennis Pease's wounds could be consistent with a suicide. (Tr. 1428.)

The Court finds that trial counsel's decision to rely on the favorable testimony adduced from the Commonwealth's experts, in addition to the expert testimony of defense witnesses, Mr. Shaver and Dr. Masello, which support Petitioner's theory of the case, was a reasonable trial tactic. The record and Mr. Gray's affidavit clearly demonstrate this strategy was the result of trial counsel's thorough investigation of the law and evidence relating to the role expert testimony would have at the Petitioner's trial. Such strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable in a habeas corpus proceeding. *Strickland* at 690-91. Based upon the finding that trial counsel's election to build Petitioner's theory of the case on the testimony of the expert witnesses called at trial was not an unreasonable exercise of professional judgment, the Petitioner fails to satisfy the performance prong of the *Strickland* test. *Smith v. Angelone*, 111 F.3d 1126, 1132-33 (1997). See also *Williams v. Kelly*, 816 F.2d 939 (1987). Therefore, Petitioner's claims as set forth in Paragraph 7(B)4(a-c) are insufficient to support the issuance of a writ of habeas corpus.

Petitioner's claims set forth in Paragraph 7(B)5 simply restate claims set forth in Paragraphs 7(B)1, 7(B)2, and 7(B)4(a-c). The claims have been found insufficient to satisfy the requirements for a valid claim of constitutionally deficient and ineffective assistance of counsel for the reasons stated *supra*. Therefore, the Court finds that Paragraph 7(B)5 also fails to establish that Petitioner's trial counsel rendered ineffective assistance of counsel under a *Strickland v. Washington* analysis and finds said claims to be insufficient to support the issuance of a writ of habeas corpus.

Paragraph 7(C)1 and 7(C)2 of the Petition for Writ of Habeas Corpus is titled *After-Discovered Evidence*. In these two paragraphs, Petitioner alleges that her trial counsel failed to fully investigate her defense based upon the failure to discover the identity and opinions of Mr. Stewart Mosher and Mr. Lowell Bradford. In Paragraph 7(C)2, Petitioner asserts that "effective

representation" required trial counsel to have discovered and called these witnesses to testify at her second trial. Petitioner claims such actions would have resulted in a different outcome of the trial and that she was severely prejudiced by counsel's failure to discover and call said witnesses.

As Respondent correctly points out and the Court now finds, after-discovered evidence is not a ground for habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). To the extent that Paragraphs 7(C)1 and 7(C)2 attempt to state a habeas corpus claim based on after discovered evidence, the Court denies the Petitioner's request for a writ on this ground.

Respondent addresses the claims of Paragraphs 7(C)1 and 7(C)2 as a claim of ineffective assistance of counsel. Respondent contends that trial counsel's failure to discover or call Mr. Mosher or Mr. Bradford as witnesses in Petitioner's trial cannot support a claim of ineffective assistance under a *Strickland v. Washington* analysis. In support of this contention, Respondent argues that the only portion of Mr. Mosher's letter to Mr. Whittaker that could be considered as proffered opinion testimony offers an opinion as to the ultimate issue in the trial. Respondent argues such testimony would be inadmissible and, as such, an insufficient ground for habeas relief.

With regard to the proffered affidavit of Mr. Bradford, Respondent also contends the only opinion offered, that "Merry Pease [Petitioner] and Dennis Pease were both shot by Dennis Pease" voices an opinion as to the ultimate issue. Thus, Respondent argues said opinion is inadmissible and an insufficient ground for habeas relief.

Finally, Respondent relies on the case of *Smith v. Angelone* for the proposition that trial counsel's election to rely on the defense experts called, in conjunction with favorable opinion testimony elicited from the Commonwealth's experts, was a reasonable tactical decision that fails to show incompetence to the prejudice of Petitioner.

The question of whether trial counsel's failure to discover and call either Mr. Mosher or Mr. Bradford was constitutionally deficient representation is controlled by *Strickland v. Washington*, 466 U.S. 688 (1984). (The requirements of the two-pronged *Strickland* test of effectiveness of counsel, having been previously discussed at length, will not be restated here.)

The opinion of Mr. Mosher that he "is surprised that [this case] was ever taken to trial" would be inadmissible. The remaining portions of Mr. Mosher's letter to Mr. Whittaker, as opposed to his affidavit, consist of Mr. Mosher outlining questions raised as a result of his review of the information relating to Petitioner's case as provided by Mr. Whittaker. If this letter can be said to be a proffer of testimony, Petitioner provides no basis for the admissibility of any portion of the contents of this letter. In failing to provide a

proffer of arguably admissible testimony of Mr. Mosher, the Petitioner fails to demonstrate incompetent conduct or prejudice under the two prongs of the *Strickland* test. *Strickland* at 688, 694.

The opinion of Mr. Bradford contained in the fourth paragraph of his affidavit (Exhibit 11 to the Petition) is also an inadmissible opinion on the ultimate issue. Trial counsel's failure to offer this evidence is neither incompetent performance nor prejudicial to the Petitioner. Thus, this claim fails to demonstrate ineffective assistance of counsel under the two-pronged *Strickland* test.

The Court further finds that trial counsel's investigation, preparation, and presentation of Petitioner's defense at trial appears to have been extremely thorough. The strategy employed by trial counsel in relation to expert, as well as lay witness, testimony appears to have been well reasoned and supported by the record. Petitioner, therefore, has failed to overcome the strong presumption that the trial strategy employed by counsel in this case falls within the category of reasonable professional assistance. *Strickland*, at 689. To the contrary, the portions of the record reviewed by this court indicate exceptional professional assistance in this case.

Finally, respondent contends that a potential claim of ineffective assistance, based on a failure to locate a putative expert willing to offer testimony not known or adduced at trial, would exist in virtually every case in which a conviction is obtained. The Court agrees that adoption of such a standard of counsel effectiveness would be impractical and unwarranted.

The infinite number of putative experts who could potentially provide opinion testimony perfectly illustrates the necessity of a standard of reasonableness when fashioning a test of professional assistance. This, likewise, illustrates the unreasonableness of Respondent's claims contained in Paragraphs 7(C) and 7(C)2. Implicit in these claims is Petitioner's request that the Court grant a new trial on the basis that Petitioner, some four years after trial, produces a putative expert who questions the outcome of her trial. The test enunciated in *Strickland v. Washington* has governed these claims for more than two decades. The *Strickland* test requires both a showing of *unreasonably* deficient performance by counsel which so prejudiced the Petitioner that there is a reasonable probability that the outcome of the trial would have differed. *Strickland* 689-92. Petitioner's trial counsel cannot be said to have failed to provide reasonable professional assistance in failing to discover all potential expert witnesses who could have testified at trial. Neither can it be said, with reasonable probability, that, had these witnesses testified, the outcome would have differed. Therefore, Petitioner's claims in Paragraph 7(C) and 7(C)2 are insufficient to support issuance of a writ of habeas corpus.

Due to Petitioner's failure to identify and provide a proffer of those witnesses who would testify as to Petitioner's innocence, as alluded to in Paragraph 8 of the Petition, the Court finds this claim to be fatally conclusory and without merit.

For the reasons stated herein, the Court finds that Petitioner is not entitled to the relief sought and that the Petition for Writ of Habeas Corpus should be and is hereby denied as to each claim raised, and it is adjudged, ordered, and decreed that the Petition is dismissed with prejudice.